UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| YVONNE WARNSLEY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:06 CV 325 |
| | ) | |
| JOHN E. POTTER, | ) | |
| Postmaster General, | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| Agency, | ) | |
| Defendant | ) | |

## OPINION and ORDER

Plaintiff Yvonne Warnsley ("Warnsley"), who is proceeding *pro se*, filed a complaint alleging that her employer, defendant United States Postal Service ("Postal Service") discriminated against her on account of her race and gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). On March 19, 2008, the Postal Service moved for summary judgment pursuant to FED. R. CIV. P. 56, and gave Warnsley *Faulkner* notice of the possible consequences of failing to respond to a motion for summary judgment, as required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992). (DE # 23, DE # 25). Despite that notice, and this court's *sua sponte* additional notice giving her until October 29, 2008, to do so, Warnsley has not filed any response.

This does not bode well, because—as was explained in the Postal Service's *Faulkner* notice to Warnsley—RULE 56 imposes an obligation to respond:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. If the

opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

FED. R. CIV. P. 56(e)(2). It is "appropriate" to enter summary judgment if the moving party demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Indeed, a summary judgment is mandated:

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

Warnsley's claim, as pleaded in her complaint, is that:

> I was discrinated against do to my gender & race. That I was not awarded mgrs position during second interview process because of EEO filed. That I was not treated as the others that were detailed into mgrs position.
> That the three caucasians detailed into the mgr of transportation position was given longer periods of time in position then myself (african american) That at the time of the details you had to be in the skills bank. Steve Minick white male was never in skills bank. White female promoted into mgr of transportation position after only having been in position for 45 days.

Complaint ¶¶ 3, 4 (sic). In its motion for summary judgment, the Postal Service has treated the complaint as alleging five claims: 1) gender discrimination in being "detailed"[1] into the Transportation Manager position for too short a time; 2) race

---

[1] The court is aware from this and prior cases involving the Postal Service that being "detailed" is Postal Service jargon for a temporary assignment to a position.

2

discrimination in that detail being too short; 3) gender discrimination in not being permanently promoted into the Transportation Manager position; 4) race discrimination in not being permanently promoted into that position; and 5) discriminatory retaliation in the form of not being permanently promoted into that position. The court agrees that this is a helpful categorization to use for analyzing Warnsley's claims.

For all five claims, the court's analysis is guided by the same methodology. This is because plaintiffs ordinarily lack direct proof of discrimination (*e.g.*, a statement such as "I am not promoting you because you are a woman, and I only promote men"), and so have been given a tool which creates a presumption of discrimination even without direct proof, the "indirect method" established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Using the indirect method, a plaintiff establishes a *prima facie* case of discrimination by showing that he/she is a member of a protected class, that he/she applied, and was qualified for, a position for which the employer was seeking applicants, that he/she was rejected, and the employer thereafter continued to seek applicants with similar qualifications or filled the position with someone outside the protected class.[2] *Id*. If plaintiff has evidence to support each of these elements, a presumption of discrimination is created, which places a burden on the defendant to

---

Detail assignments often serve to allow employees to determine whether they are interested in a position, and for supervisors to evaluate their suitability for that position.

[2] These elements vary with the factual circumstances. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 n. 13 (1973). For example, in a termination case the plaintiff must show that he or she was meeting the employer's expectations for the position. The elements of each of Warnsley's claims vary slightly, as will be explained in the text.

articulate a legitimate, non-discriminatory reason to explain its actions. *Id*. If the defendant does so—and perhaps only the least ingenuous defendant in the world would not be able to do so—the presumption "drops from the case"[3] and the plaintiff is given a "full and fair opportunity" to demonstrate that the defendant's rationale is actually a cover-up for unlawful discrimination. *Id*. at 804-05. The plaintiff of course always has the "ultimate burden of persuading the [trier of fact] that [he] has been the victim of intentional discrimination." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-08 (1993) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981)) (brackets in original); *Brown v, Illinois Dept. of Nat'l Resources*, 499 F.3d 675, 681 (7th Cir. 2007) (summarizing indirect method).

In the present case, because Warnsley has failed to respond to the Postal Service's motion for summary judgment and point to any direct evidence of discrimination, her case must be reviewed by applying the indirect method of proof to the undisputed facts established by the Postal Service in support of its motion. The Postal Service argues that the undisputed facts show that Warnsley cannot even establish a *McDonnell Douglas*

---

[3] *See*, *e.g.*, *Baron v. City of Highland Park*, 195 F.3d 333, 339 (7th Cir. 1999) ("If the defendant is able to satisfy this burden, the *McDonnell Douglas* presumption drops from the case and is no longer relevant.") While it is true that any *presumption* of discrimination evaporates at that point, the elements of the *McDonnell Douglas prima facie* case do retain some evidentiary relevance. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993); *see also Hall v. Forest River, Inc.*, 536 F.3d 615, 621 (7th Cir. 2008) ("*once evidence has been presented at trial*, the burden-shifting of the *McDonnell Douglas* method falls away") (emphasis added).

4

*prima facie* case, and so is entitled to no presumption of discrimination, making a summary judgment for the Postal Service appropriate. Briefly, the material undisputed facts established by the Postal Service's motion and supporting exhibits are as follows.[4]

Warnsley is a black female who began working for the Postal Service on March 14, 1987. At all times relevant, she was a network specialist in transportation at the Fort Wayne, Indiana, Processing and Distribution Center.

Sometime during 2001 the Manager of Transportation position became vacant. That position reported directly to the Processing and Distribution Center Plant

---

[4] Because of Warnsley's failure to respond, the facts as claimed and supported by the Postal Service are deemed true. LOCAL RULE 56.1(b). It was not easy to deem any facts true, however, because of the great difficulty the court had locating the relevant supporting information cited in the Postal Service's statement of material facts.

This difficulty resulted from the way the Postal Service's attorneys filed exhibits in the court's CM/ECF system. To give only two examples, on page 4 of its memorandum in support, the Postal Service states that Plant Manager Walter Hess had received complaints from Warnsley's subordinates that she was rude and abrasive. Pages 162-163 of exhibit 2 are cited. Exhibit 2 has been put into the CM/ECF system as 21 separate pdf-format documents, none of which has a title indicating whether it might contain pages 162-163. For that matter, none of the 21 parts has a title indicating its content in any way, even though each part is (in most cases) a separate witness's testimony.

Page 4 of the memorandum also has a cite to exhibit 16 to show that Warnsley's interpersonal skills did not improve after training. Exhibit 16 is contained in a 15-page pdf document that also contains two other exhibits, without indicating which part of those 15 pages constitutes exhibit 16. Exhibit 16 is itself a 3-page document, and the citation doesn't indicate which page contains the relevant information.

The court does not mean to single the attorneys in this case out. Problems similar to those pointed out here have become too common, occurring in most summary judgment motions filed. Attorneys and their support staff must start giving their documents meaningful titles (*e.g.*, NOT "Exhibit 2 – Part 16") and otherwise using the CM/ECF system in a way that allows the court, and opposing counsel, to locate cited information without having to open every pdf document "like pigs, hunting for truffles." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991).

Manager, Walter Hess. During the vacancy, Hess "detailed" several individuals into the position. Per Postal Service policy, individuals selected for this (and other) details were supposed to be selected from the "Skills Bank," a database for employees to express their interest in promotions. However, Hess, like other managers, sometimes selected individuals who were not in the Skills Bank because it had technical problems, and sometimes did not list the names of individuals it should.

The longest period of time Hess could detail an individual into the position was 120 days. However, the length of time an individual remained in the detail was subject to his discretion, based on his assessment of the individual's performance, considering factors such as mastery of the technical aspects of the job, and interaction with subordinates, peers, and supervisors. The individuals Hess detailed into the position, and the length of time their details lasted, were plaintiff Warnsley, 25 days; white male Steve Minick, 61 days, and a second detail lasting 50 days; white female Linda White, 48 days; and white male Lloyd Tisher, 119 days.

In December 2001 plaintiff Warnsley told Hess she was interested in being detailed into the position, and in February 2002, he did so, promising her a one-month trial period. At the end of that period, Hess decided to end Warnsley's detail because he had received complaints that she was curt, rude and abrasive, from others who reported directly to him, and also from her subordinates and other lower-level employees. In addition, he also wanted a "neutral" individual in the job, meaning someone who had not applied to fill it permanently. While Warnsley was detailed into

6

the position, it was posted, within the "Greater Indiana District," as a vacant position on February 19, 2002. Warnsley and three other individuals applied.

The written application used by the Postal Service, called a Form 991, contains a "Knowledge, Skills, Abilities" section ("KSA") in which the applicant must write a narrative, using a methodology the Postal Service calls the "Star Process" which involves the applicant listing problems he/she has encountered and how he/she solved them, and is used to assess the applicant's fitness for the position. Hess reviewed the Form 991 applications, and felt that Linda White's was superior to Warnsley's. In his opinion, White's KSA section was well-reasoned and written, while Warnsley's was simplistic and not in depth.

Of the four individuals who applied, three were interviewed: Linda White (white female), Warnsley, and Martin Hunnicutt. Hess asked Edward Senter, the acting Plant Manager,[5] and Gerry Beaven, the Manager of Transportation from Indianapolis, to participate in the interviews. Hess, Senter and Beaven compiled a list of questions to ask, and each candidate was asked those same questions. After the interviews, Hess, Senter and Beaven discussed the candidates and all agreed that Linda White was the best of the three. She gave in-depth answers to both technical and theoretical questions. Although Warnsley appeared to be technically competent, Senter believed that during the interview she had given short answers that did not demonstrate her abilities as

---

[5] At various times during the time period relevant in this case, Hess was performing a temporary assignment at another post office.

strongly as she should have, and that she did not display the "people skills" desired in a manager.

Hess selected Linda White as the person for the job, but his choice had to be approved by his immediate superior, Charles Donnigan, who was the Senior Plant Manager for the Greater Indiana District. Donnigan did not approve. He did not object to White specifically, but believed the position was critical because it had a large impact on other post offices. He wanted to post the position nationally to see if any candidates with more experience applied. The position was re-posted on June 18, 2002.

Warnsley, White and Hunnicutt again applied, along with two other individuals. This time, because there were more than four applicants, Postal Service procedures required a review board to be formed. The board consisted of a labor representative (a female), a subject-matter expert (Beaven) and an individual who was a minority (the Postmaster of Decatur, Indiana.) Hess requested the board to select three applicants for interviews, but the board selected four: Warnsley, White, Hunnicutt, and Lloyd Tisher (white male.) Hess asked Jeff Mitchell, who at the time was the acting Plant Manager, to assist him in the interviews.

The interviews were conducted on August 22, 2002. After the interviews, Hess and Mitchell agreed that White was the best candidate. They felt that while Warnsley was "OK" in her knowledge of technical aspects of the position, she lacked the necessary interpersonal skills to function adequately in the position and she did not

demonstrate an understanding of how the position was part of the "bigger picture" of Postal Service operations. White was again selected for the position.

Prior to conducting the interviews, neither Mitchell nor Hess knew that Warnsley had already initiated Postal Service Equal Employment Opportunity ("EEO") procedures. They were not aware that on July 15, 2002, Warnsley contacted an EEO counselor and complained that her detail to the Transportation Manager position had ended on March 8, 2002, after only 28 days because of gender and race discrimination. On September 17, 2002, she again complained to an EEO counselor that she had not been selected for the Transportation Manager position because of gender and race discrimination, and on September 24, 2002, she filed a formal EEO complaint.

On October 9, 2002, Warnsley e-mailed Mitchell and asked him why she had not been selected as the Transportation Manager. Mitchell responded by e-mail the next day, stating that he believed that she had already filed a formal EEO complaint or was exploring doing so, and that he was willing to speak with her only if no formal investigation was in progress. This e-mail is the earliest evidence that someone involved in the promotion decision knew of Warnsley's EEO activity.

Warnsley's formal EEO complaint did not mention retaliation, and the scope of the Postal Service's investigation was gender and race discrimination in the short length of Warnsley's detail to the Transportation Manager position, and in her non-selection to permanently fill that position. An EEO investigative report issued on May 26, 2004, that did not resolve Warnsley's complaint. She appealed that decision to the EEOC, and was

9

allowed to amend her complaint to include a charge of retaliation. An administrative hearing was held on May 10, 2005, and on June 27, 2005, an administrative law judge rendered a decision that no discrimination or retaliation had occurred.

## ANALYSIS

**A. Duration of Detail Assignment in Transportation Manager Position**

*1. Failure to exhaust administrative remedies*

A federal employee who believes he/she has been discriminated against must contact an EEO counselor within 45 days of the act alleged to be discriminatory. 29 C.F.R. 1614.105(a)(1). Failure to meet administrative time limits for filing is a failure to exhaust administrative remedies, and that exhaustion is a precondition to filing suit in district court. See *Gibson v. West*, 201 F.3d 990, 993-94 (7th Cir. 2000).

The Postal Service argues that it is entitled to summary judgment on Warnsley's claims regarding the duration of her detail because she failed to contact an EEO counselor within 45 days. She complained that the discrimination occurred when her detail ended on March 8, 2002, but her first contact with an EEO counselor was not until July 15, 2002. However, as Warnsley stated in the EEO "Information for Pre-complaint Counseling" form she completed and as was reiterated in the EEO counselor's report, Warnsley (alleges that she) did not become aware that she had been discriminated against until July 3, 2002, when Lloyd Tisher was allowed to remain on his detail assignment in the position after he applied for the vacancy. This was in contrast to what

Hess had told her when he ended her detail: that he wanted a "neutral" person who had not applied for the job in the position.

Timely exhaustion of administrative procedures is subject to equitable tolling, waiver and estoppel. *Id*. For example, the filing deadline is extended if the plaintiff lacked essential information (which could not have been discovered using reasonable diligence) bearing on the existence of a claim. *Cada v. Baxter Healthcare*, 920 F.2d 446, 452 (7th Cir. 1990). Here, because Warnsley alleges that she was not aware she had been discriminated against until she observed the preferential treatment of Lloyd Tisher, the Postal Service will not be granted summary judgment on the basis that she failed to exhaust administrative remedies.

### 2. *Prima facie case*

Warnsley's *prima facie* case requires her to show that: 1) she is a member of a protected class; 2) she was meeting her employer's legitimate expectations; 3) she suffered an adverse job action; and 4) employees outside the protected class were treated more favorably. *Hossack v. Floor Covering Assoc. of Joliet, Inc.*, 492 F.3d 853, 860 (7th Cir. 2007). Warnsley must have evidence on each of these elements before a presumption of discrimination arises requiring the Postal Service to articulate a legitimate non-discriminatory reason for its actions. *See Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 327 (7th Cir. 2002) ("If a plaintiff is unable to establish a *prima facie* case of employment discrimination under *McDonnell Douglas*, an employer may not be subjected to a pretext inquiry"); *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir.

1997) ("the prima facie case under *McDonnell Douglas* must be established and not merely incanted.")

Speaking only to her gender-discrimination claim, Warnsley has no evidence suggestive of the fourth element. Besides her, only three other employees were detailed into the position for a longer period than Warnsley, and one of them was also a female. Thus, there is no evidence that employees outside the protected class were treated more favorably. Although two males were treated more favorably, so was a female, and a group of 3 which includes a member of the protected class does not indicate favorable treatment for any. *Cf. Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 726 (7th Cir. 2008) (fourth element not satisfied in mini-RIF case where employee's duties absorbed by others both within and without the protected class).

As to both gender and race, Warnsley lacks any evidence on the second and third elements of her *prima facie* case. As to the second element, she has no evidence that she was meeting Hess's legitimate expectations. He told her that he would give her a thirty-day trial in the position and he did,[6] removing her at the end of that period because of the number of complaints he had been receiving about her from others reporting directly to him, her subordinates, and other employees she interacted with.

As to the third element, there is no evidence that the short duration of Warnsley's detail constituted an adverse employment action. To be actionable, an

---

[6] Although she was removed after 28 days, the difference is negligible. In fact, 28 days was enough for her to be in the position for four work weeks, equivalent to thirty days in common parlance.

12

adverse employment action must significantly alter the terms and/or conditions of an individual's employment. *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007). There is no evidence that ending Warnsley's detail after 30 days had any impact on her hours, pay, benefits, etc., and so it was not a materially adverse action.[7]

Because Warnsley's evidence concerning the length of her detail is not sufficent to create a *prima facie* case using the indirect method, the Postal Service is entitled to summay judgment.

## B. Failure to promote

Warnsley complains that she was denied a permanent promotion to the Transportation Manager position on account of gender and race discrimination. On this claim, her *prima facie* case using the indirect method requires her to have evidence showing: "'1) [s]he belongs to a protected class, 2) [s]he applied for and was qualified for the position sought, 3) [s]he was rejected for that position and 4) the employer granted the promotion to someone outside of the protected group who was not better qualified than the plaintiff.'" *Fischer v. Avanade, Inc.*, 519 F.3d 393, 402 (7th Cir. 2008)

---

[7] The Postal Service admits that because her detail in the position lasted less than 30 days, Warnsley could not list it on her application for permanently filling the position. However, as the Postal Service argues, that did not adversely impact her consideration for the position. Even without that experience listed on her application, she was granted an interview both times the position was posted. Hess, and the other individuals involved in the decision, believed that she had the necessary technical skills but denied her the promotion mostly because of their belief that she lacked the necessary interpersonal skills.

13

(brackets in original) *(quoting Grayson v. City of Chicago,* 317 F.3d 745, 748 (7th Cir. 2003)).

Obviously, Warnsley's gender discrimination claim fails because the fourth prong is not satsified: the promotion went to another female, Linda White. Warnsley also fails to satisfy the fourth element in regard to race discrimination, which requires her to have evidence that the promotion went to a person who was not better qualified than she. The undisputed evidence in the summary judgment record establishes that the individuals involved in the promotion decision felt that the KSA portion of White's application was superior to Warnsley's, and that White's comportment during the two oral interviews was better, demonstrating that she had superior interpersonal skills making her more suitable for the position.

For these reasons, Warnsley fails to demonstrate the existence of a *prima face* case on her promotion claim, and the Postal Service is entitled to summary judgment.

## *C. Retaliation*

To prove her claim that she was not selected for the Transportation Manager position because of retaliation using the indirect method, Warnsley must have evidence showing: 1) she engaged in a statutorily protected activity; 2) she met the employer's legitimate expectations for the promotion sought; (3) she was not promoted; and (4) the promotion went to a person outside of the protected group who was not better qualified than the plaintiff. *Hall v. Forest River, Inc.*, 536 F.3d 615, 621 (7th Cir. 2008); *Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 903-04 (7th Cir. 2005).

As explained above, Hess and other individuals involved in the decision believed that Warnsley lacked the necessary interpersonal skills for the job, and that White, who was selected, had superior qualifications. Warnsley therefore lacks evidence on both the second and fourth prongs of her *prima facie* case, because the undisputed evidence is that she neither met her employer's legitimate expectations for the position, nor was she as qualified as the person who was promoted. For this reason, the Postal Service is entitled to summary judgment on Warnsley's retaliation claim.

## CONCLUSION

For the foregoing reasons, the Postal Service's motion for summary judgment (DE # 23) is **GRANTED**. The clerk shall enter a final judgment in favor of the Postal Service, stating that plaintiff Warnsley is entitled to no relief.

**SO ORDERED.**

Date: November 13, 2008

 s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT